IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.   Civil Action No. 2:10-0498

SHIDA S. JAMIE, JAMES S. "JIMMY" JAMIE,
AND GOLDEN HEART IN HOME CARE, LLC,

    Defendants.

## MEMORANDUM IN SUPPORT OF THE UNITED STATES *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Shida S. Jamie ("Shida Jamie"), James S. "Jimmy" Jamie ("Jimmy Jamie"), and Golden Heart In Home Care, LLC ("Golden Heart) have committed and are committing Federal health care offenses, and have alienated and disposed of property derived from such offenses. Through this motion, the United States seeks to stop the ongoing commission of Federal health care offenses, and freeze property and assets in an attempt to preserve them for restitution. To this end, the United States seeks a temporary restraining order pending a hearing and ruling on its motion for a preliminary injunction.

### STATEMENT OF FACTS

Contemporaneous with this motion the United States has filed a Complaint for Injunctive Relief ("Complaint"), and supporting affidavit from Special Agent Mary Ann Withrow, Office of

Investigations, Office of the Inspector General, United States Department of Health and Human Services. The relevant facts are set forth fully in the Complaint and Affidavit, and the same are incorporated by reference herein.

Generally, the Complaint and Affidavit allege that Shida Jamie, Jimmy Jamie and Golden Heart have committed Federal health care offenses as defined by 18 U.S.C. § 24, predicates for the issuance of a fraud injunction under 18 U.S.C. § 1345. The Complaint and Affidavit further allege that Shida Jamie, Jimmy Jamie and Golden Heart have alienated or otherwise disposed of assets derived from such Federal health care offenses.

## DISCUSSION

### The Fraud Injunction Statute

The Fraud Injunction Statute, 18 U.S.C. § 1345, authorizes federal district courts to enjoin the commission of Federal health care offenses, and to preserve property and assets derived from those offenses, through the issuance of a temporary restraining order and preliminary and permanent injunction. The statute allows the Attorney General to "'put a speedy end to a fraud scheme by seeking an injunction in federal district court' as soon as the requisite evidence is secured." United States v. American Heart Research Foundation, Inc., 996 F.2d 7, 11 (1st

Cir. 1993). "The legislative history shows that Congress authorized this expedited action precisely because 'the investigation of fraudulent schemes often takes months, if not years, before the case is ready for criminal prosecution' and in the meantime 'innocent people continue to be victimized.'" Id. at 11 (quoting S. Rep. 225 at 401-02). Congress recognized that "[e]xperience has shown that even after indictment or the obtaining of a conviction, the perpetrators of fraudulent schemes continue to victimize the public." S. Rep. Mo. 98-225, 98th Cong., 1st Sess. (1983); see also, S. Rep. N. No. 225, 98th Cong., 2d Sess. 401-02, reprinted in, 1984 U.S.C.C.A.N. 3182,3539-40. As noted in United States v. DBB, Inc., 180 F.3d 1277, 1283 (11th Cir. 1999), the legislative history indicates that Congress intended to enhance the government's ability to enjoin the dissipation of assets wrongfully obtained through fraud, and to also allow for the freezing of substitute assets. See, 180 F.3d 1285; 18 U.S.C. § 1345(a)(2)(B).

Assets frozen under the fraud injunction statute were historically required to be traceable to the alleged illegal activity. However, in 1996, Congress amended the fraud injunction statute to expressly authorize courts to freeze property "obtained as a result" or "traceable" to a Federal health care offense, or "property of equivalent value."

Additionally, unlike a temporary restraining order issued pursuant to Fed. R. Civ. P. 65(b), orders under the fraud injunction statute are not intended to expire within a brief period of time. See <u>DBB, Inc.</u>, 180 F.3d at 1284. By authorizing the government to freeze "property of equivalent value," the statute "explicitly provides broader relief for situations where the property obtained through fraud is not easily identified." <u>Id.</u> At 1286. As noted by the Court of Appeals for the Eleventh Circuit, "given the realities and practicalities of litigation, [a temporary restraining order that expires in 10 or 20 days] would be of dubious value to the government." Id.

<u>Standard for Relief</u>

A request for injunctive relief may be granted under 18 U.S.C. § 1345 through procedures that are less formal, and evidence less complete, than ordinarily would be required at a trial. <u>University of Texas v. Camenisch</u>, 451 U.S. 390, 395 (1981) (party is not required to prove his case in full at a preliminary injunction hearing). The Court of Appeals for the Fourth Circuit has recognized that in situations where the public interest is at stake, like in this case, a court's equitable powers are enhanced. <u>United States ex rel. Rahm v.</u>

Oncology Associates, P.C. et al., 198 F.3d 489, 497 (4th Cir. 1999).

Traditionally, a temporary restraining order requires the movant to show a substantial likelihood of success on the merits, and a substantial threat of irreparable injury if the injunction is not granted. However, where the relief is specially authorized by statute and the action involves the United States in its enforcement role, the standard for the issuance of a temporary restraining order or preliminary injunction is different than that which is applied in a case between private litigants. In this case, irreparable harm is effectively presumed and the court's equitable powers are enhanced. See Federal Deposit Insurance Corp. v. Faulkner, 991 F.2d 262, 265 (5th Cir. 1993)(Congress has power to authorize preliminary injunctions even though they would be unavailable under traditional equity principles); United States v. Odessa Union Warehouse Co-op, 833 F.2d 172, 174-5 (9th Cir. 1987); United States v. Medina, 718 F. Supp. 928, 930 (S.D. Fla. 1989)(showing of irreparable harm not required for injunction against violation of Federal Communications Act, which authorized relief against anyone violating the Act.) As one court noted, because Congress has already declared the fraudulent activity to be harmful, "once undesirable conduct is

established, it is fair to conclude that the public interest will be served if appropriate injunctive relief is granted." United States v. Fang, 937 F. Supp. 1186, 1199 (D. Md. 1996). For application of this principle to § 1345 actions, see United States v. Barnes, 912 F. Supp. 1187, 1195 (N.D. Iowa 1996); United States v. Weingold, 844 F. Supp. 1560, 1576 (D.N.J. 1994), and United States v Fang, 937 F. Supp. 1186, 1199 (D. Md. 1996). Accordingly, irreparable harm need not be established as a predicate for the temporary restraining order sought through this motion.

To obtain relief under 18 U.S.C. § 1345, the United States need not show a likelihood that it will prevail on the merits of its Complaint. Rather, the United States is only required to establish that defendants are committing or about to commit a Federal health care offense, or one of the other specified statutory predicate offenses. See, e.g., United States v. William Savran & Associates, Inc., 755 F. Supp. 1165, 1177 (E.D.N.Y. 1991). Courts interpreting the fraud injunction statute have applied various standards of proof to determine whether a defendant is committing or is about to commit a defined offense. Several courts have adopted the probable cause standard of proof based, in part, upon Congressional concern "about the possibility that innocent people would continue to be

victimized by fraudulent schemes during the often lengthy period of time required to investigate such schemes and bring criminal charges against is perpetrators." See, e.g., United States v. Belden, 714 F. Supp. 42, 44 (N.D.N.Y. 1987). The Belden Court reasoned, "it is unlikely that Congress intended to hold the government to a more stringent standard than that of probable cause when relief under 1345 was sought, since 1345 was intended to make it easier for the government to obtain preliminary injunctions as a means of terminating fraud schemes during the pendency of criminal investigations . . ." Belden at 45; see also, United States v. Weingold, 844 F. Supp. 1560, 1571 (D.N.J. 1994)(probable cause is the "controlling substantive standard"). Moreover, the Court in United States v. Fang, supra, after conducting an exhaustive analysis, determined that the proper standard is probable cause. The court reasoned, "if Congress contemplated a 'speedy' way to get at the fruits of ongoing or likely to recur fraud, all that would seem necessary would be a strong albeit reasonable suspicion that fraud is occurring or likely to recur." Fang, 937 F. Supp. At 1197. The United States submits that it has more than met this standard here, and that injunctive relief is proper based upon the facts set forth in the Complaint and supporting Affidavit.

## The Evidence Warrants Ex Parte Relief

In this case, the issuance of an *ex parte* temporary restraining order is both warranted and necessary to prevent the continued commission of Federal health care offenses and to protect against dissipation of assets. As noted by the Court of Appeals for the Second Circuit, "If notice is required, that notice all too often appears to serve only to render fruitless further prosecution of the action. This is precisely contrary to the normal and intended role of 'notice,' and it is surely not what the authors of the rule either anticipated or intended." In the matter of Vuitton e Fil, S.A., 606 F.2d 1, 5 (2d Cir. 1979); See also, Calero - Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 679 (1974)(pre-seizure notice and hearing not necessary where such procedure might frustrate the interests served by the statutes; First Technology Safety Systems v. Depinet, 11 F.3d 641, 650 (6th Cir. 1993); Little Tor Auto Center v. Exxon Company USA, 822 F. Supp. 141, 143 (S.D.N.Y. 1993)(*ex parte* procedure allowed in connection with TRO application "where advance contact with the adversary would itself be likely to trigger irreparable injury.") Given the history of depletion of Medicaid funds, the willingness to engage in "under the table" and "off the books" financial transactions, and the exorbitant spending patterns publicly

exhibited by defendants, it is reasonable to assume that Shida Jamie, Jimmy Jamie and Golden Heart will continue to alienate, transfer, or otherwise conceal property and assets. Thus, it is appropriate that this application be granted without prior notice to them. Their interests will be fully protected at a preliminary injunction hearing.

## CONCLUSION

The purpose of the fraud injunction statute is to prevent the ongoing commission of Federal health care offenses and to preserve the fruits of the fraud for the benefit of those who have been victimized. In this case, substantial evidence exists, even prior to the execution of a search warrant, that Shida Jamie, Jimmy Jamie and Golden Heart have defrauded the West Virginia Medicaid program through the submission of claims for services purportedly provided after the death of a member, by disqualified convicted felons and homemakers without mandatory minimal training and/or required certifications and licenses. This evidence warrants a temporary restraining order to enjoin ongoing fraudulent activity and to prevent further alienation or dissipation of the proceeds of the fraud, or assets of equivalent value.

WHEREFORE, the United States respectfully requests that the Court enter a temporary restraining order to prohibit Shida S.

Jamie, James S. "Jimmy" Jamie and Golden Heart In Home Care, LLC from the commission of Federal health care offenses as defined by 18 U.S.C. § 24, and from withdrawing, transferring, removing, dissipating or disposing of property derived from the commission of a Federal health care offense, or from withdrawing, transferring, removing, dissipating or disposing of property of value equivalent to property derived from such an offense, pending a hearing and ruling on the motion for a preliminary injunction.

Respectfully submitted,

CHARLES T. MILLER
United States Attorney

s/Carol A. Casto
Assistant United States Attorney
WV State Bar Number 890
Attorney for United States
P.O. Box 1713
Charleston, WV 25326
Phone: 304-345-2200
Fax: 304-347-5443
E-mail: carol.casto@usdoj.gov