IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                   CIVIL ACTION NO. 2:10-cv-00498

SHIDA S. JAMIE, et al.

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Michael O. Callaghan's Motion for Award of Attorney Fees [Docket 34], filed on December 1, 2010. On December 6, 2010, the United States responded to the motion, arguing that Defendant Shida S. Jamie should not be permitted to finance her defense with the proceeds of an allegedly fraudulent health care business. Also pending before the Court is Defendant Jamie's Motion to Release Assets for Living Expenses [Docket 23]. For the reasons stated herein, the motion for attorneys' fees [Docket 34] is **GRANTED**, and the motion for living expenses [Docket 23] is **DENIED**.

*I.  FACTUAL BACKGROUND*

This case was initiated by the United States on April 16, 2010, and it seeks an injunction pursuant to 18 U.S.C. § 1345 to preclude the named defendants from committing federal health care offenses. On April 19, 2010, the Court found that probable cause exists to conclude that Defendants Jamie and Golden Heart In Home Care, Inc. ("Golden Heart"), committed federal health care offenses. As a result, the Court entered a temporary restraining order ("TRO"), which is still in

place and which precludes Defendants from engaging in certain financial transactions or operating Golden Heart. (Docket 6.)

On April 20, 2010, Defendant Jamie contacted Mr. Callaghan to represent her in the present case. Mr. Callaghan represented Defendant Jamie until October 4, 2010, at which time the Court permitted his withdrawal as Ms. Jamie's attorney due to irreconcilable differences. (Docket 30.) During those approximately six months, Mr. Callaghan and the United States unsuccessfully attempted to negotiate the release of a portion of Defendants' frozen assets to satisfy Mr. Callaghan's fees and litigation costs. The disagreement between Mr. Callaghan and the United States was largely as to the dollar amount to be unfrozen and exempted from the Court's TRO. Ultimately unable to reach an agreement with the United States, Mr. Callaghan now seeks fees and costs directly from the Court.

## II. ATTORNEYS' FEES

The purpose of freezing assets in this case is to preserve the status quo and prevent those assets from being dissipated or diverted during the pendency of the case. District courts unquestionably have broad discretion to manage the timing and process of TROs. *See, e.g.*, *SEC v. Dowdell*, 175 F. Supp. 2d 850, 853 (W.D. Va. 2001). District courts have the additional, corollary authority to release frozen personal assets or lower the amount frozen. *See, e.g.*, *SEC v. Ducluad Gonzalez de Castilla*, 170 F. Supp. 2d 427, 429 (S.D.N.Y. 2001). The award of attorneys' fees in such cases is firmly entrusted to the discretion of the district court. *See Commodities Futures Trading Comm'n v. Am. Metals Exch. Corp.*, 991 F.2d 71, 79 (3d Cir. 1993) (citing *SEC v. Capital Counsellors, Inc.*, 512 F.2d 654, 658 (2d Cir. 1975)). In determining whether restrained funds should be used to pay attorneys' fees, the Court is instructed to balance the "government's

justification for restraining property with the defendant's legal interest in a full and fair hearing on the merits." *United States v. Payment Processing Ctr., LLC*, 439 F. Supp. 2d 435, 441 (E.D. Pa. 2006). While the United States correctly asserts in its responsive memorandum that the Sixth Amendment does not entitle Defendants in this case to use frozen funds to finance their legal defense, the Court nonetheless has the authority to release frozen funds "in the interest of fundamental fairness if wrongdoing is not yet proven and the restrained property is a defendant's only means of securing counsel." *United States v. Petters*, No. 08-cv-5348, 2009 WL 803482, at *2 (D. Minn. Mar. 25, 2009); *accord Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 775 (9th Cir.1995) (district court must exercise discretion in awarding fee applications when wrongdoing is not yet proven); *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 565 (5th Cir.1987) ("[T]he court cannot assume the wrongdoing before judgment in order to remove the defendants' ability to defend themselves."); *Payment Processing*, 439 F. Supp. 2d at 440-41 (although Sixth Amendment does not entitle defendant to release of frozen assets, that rationale "does not merit denying a defendant in a § 1345 action a reasonable claim for fees from restrained property upon the appropriate showing before the § 1345 complaint has been resolved on the merits").

In this case, the United States clearly has an interest in preserving the frozen assets to satisfy any future restitution or forfeiture. However, Defendants' interest in the advice of counsel to ensure a full and fair hearing on the merits of this case warrants a release of a portion of the frozen assets to satisfy attorneys' fees and costs. *Cf. Noble Metals Int'l*, 67 F.3d at 775 ("Discretion must be exercised by the district court in light of the fact that wrongdoing is not yet proved [sic] when the application for attorney fees is made."). After hearing from the parties and considering the briefs

on this matter, the Court **FINDS** that Defendant Jamie has no other substantial assets to satisfy Mr. Callaghan's submitted fees. *See, e.g.*, *Payment Processing*, 439 F. Supp. 2d at 440 (defendant's ability to fund a defense is an important factor in determining whether equity favors releasing the assets). As such, the Court will authorize payment of attorneys' fees at a reasonable hourly billing rate for those fees necessarily incurred in Defendant Jamie's defense.

In determining a reasonable fee to award Mr. Callaghan, the Court finds precedent concerning the award of attorneys' fees to a prevailing party in certain civil cases (the "Lodestar" method) instructive. Factors under that method include, *inter alia*: (1) the time and labor expended by the attorney; (2) the novelty and difficulty of the legal question or questions involved in the case; (3) the skill required to properly render legal services; (4) the customary fee for similar work; (5) the time limitations and demands of the case; (6) the experience, reputation, and ability of the attorney;(7) the undesirability of the case within the legal community in which the suit arose; and (8) attorneys' fees awards in similar cases. *E.g.*, *Jackson v. Estelle's Place, LLC*, No. 09-1700, 2010 WL 3190697, at *3-4 (4th Cir. Aug. 12, 2010); *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). After considering Mr. Callaghan's submitted fee request, the above factors as they relate to this case, and the parties' briefing, which details a course of fee negotiations between the Assistant United States Attorney and Mr. Callaghan, the Court **FINDS** that the total number of hours submitted is reasonable.

As to the hourly rate, Mr. Callaghan seeks fees at the privately negotiated rate of $350 per hour; the United States urges the Court to award fees at the current hourly rate for court-appointed counsel pursuant to the Criminal Justice Act ($125 per hour) or slightly above. The Court expresses no opinion as to the reasonableness of Mr. Callaghan's private hourly rate of $350 per hour.

4

However, after considering the nuances of this case, and particularly the need to preserve funds to satisfy any future restitution order, the Court **FINDS** $250 per hour to be an appropriate hourly fee. Accordingly, the Court **GRANTS** Mr. Callaghan's motion and **ORDERS** the release of $23,825.00 in attorneys' fees (95.30 hours at $250 per hour) and $26.00 in litigation costs to Mr. Callaghan. The total amount to be released from the Court's TRO and awarded to Mr. Callaghan for his service in this case is $23,851.00.

### III.  LIVING EXPENSES

Also pending before the Court is Defendant Jamie's Motion to Release Assets for Living Expenses [Docket 23]. The release of assets from a district court's TRO for living expenses is, like release for attorneys' fees, within the sound discretion of the court. *See Dowdell*, 175 F. Supp. 2d at 854. In making the determination of whether to release restrained assets for a defendant's living expenses, "[c]ourts are called upon to weigh 'the disadvantages and possible deleterious effect of a freeze . . . against the considerations indicating the need for such relief.'" *Id.* (quoting *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1105 (2d Cir. 1972)). Considerations relevant to the Court's determination include Defendant's overall assets, her current monthly income, the nature of the living expenses sought, and her efforts to acquire income by other means. *See Decluad Gonzalez de Castilla*, 170 F. Supp. 2d at 429-30 (examining defendant's current assets, nature of the expenses to be satisfied by the requested funds, and defendant's voluntary waiver of a monthly salary). In this case, as the United States rightly points out, Defendant Jamie owns her primary residence and pays no monthly mortgage. She shares her primary residence with an able-bodied son in his mid-twenties, who is fully capable of sharing the expenses associated with maintaining their home. Although Defendant Jamie has no monthly income due to the Court's order restraining co-

Defendant Golden Heart from engaging in business as usual (Docket 6), Ms. Jamie has made no ostensible efforts to attain alternate sources of income, even despite the Court's strong suggestion at the hearing on this matter. In light of these considerations and the limited amount of liquid assets currently restrained to satisfy potential restitution, Defendant Jamie's motion to release restrained assets for living expenses is **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, Mr. Callaghan's motion for attorneys' fees [Docket 34] is **GRANTED** in the amount of $23,851.00, and Defendant Jamie's motion for living expenses [Docket 23] is **DENIED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: January 18, 2011

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE